### J. C. PITMAN & SONS, Inc., v. PITMAN et al.*
### No. 4151.

District Court, D. Massachusetts.

Jan. 6, 1937.

Richard F. Walker, of Boston, Mass., for plaintiff.

Richard Whiting, of Boston, Mass., for defendants.

SWEENEY, District Judge.

This is a suit in equity wherein the petitioner seeks an injunction and an accounting of profits and damages, all based upon alleged infringement by the respondents of a patent now owned by the petitioner.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions as rulings of law, under the Equity Rules (28 U.S.C.A. following section. 723).

*Rehearing granted March 25, 1937.

The petitioner is a corporation with a principal place of business in Boston. The respondents are copartners doing business under the name and style of Pitman & Foster. The respondent Arthur R. Pitman applied for and was granted the patent in suit No. 1,630,309 on May 31, 1927. This invention covered an apparatus for deep-fat frying. The respondent Pitman later assigned this patent to the A. & E. Pitman Manufacturing Company, Inc., which in turn on May 25, 1932, assigned it to J. C. Pitman & Sons, Inc., the petitioners in the present action. Some time about April 1, 1935, the respondent Arthur R. Pitman terminated his relationship with the petitioner corporation, and set up in business with one Foster, manufacturing and selling the alleged infringing machine.

By stipulation of counsel it has been agreed that the respondents Pitman, the original patentee, and Foster, are estopped from contesting the validity of the letters patent, and that the only question involved is whether the respondents' device infringes claim 1 of United States patent No. 1,630,309.

Claim 1 is as follows: "In a structure of the class described, a support, a grease container of box-like form having outstanding supporting flanges, inclined bottom portions and a valved drain at the center of the bottom, together with tubes extending across the interior of the container, adapted to receive suitable heating means, said tubes being provided with longitudinally spaced internal baffles for distribution of the heat."

Devoid of its technical language, the claim is for a container for deep-fat frying with a valve outlet at its base for drawing off foreign matter. The fat is heated by means of heat passing through two tubes extending across the container and through the area into which the fat is put. It provides for heat to be applied within the area of the fat or grease rather than on the outside of the container as previously applied. The resulting effect is that the grease above the tubing is maintained at a much higher degree than the grease between the tubing and the valvular outlet. This provides for an absorption by the cooler grease of the odor and sediment particles from the food that is being cooked, and prevents such particles from being burned, and thus breaking down the frying medium.

Within the tube into which the heat is introduced, and which passes through the frying compound, baffles were provided to interfere with the flow of the heat through the tube so as to cause it to be broken up and circulated within the tube in order that maximum heating would be obtained. Without such baffles, a flame of gas or other heat introduced would have a tendency to go directly through the tube to be discharged at its outlet, with a great loss of efficiency. The baffles consisted of a triangular upright plate inserted at about the middle of the longitudinal tube, and a similar plate placed near the outlet of the tube. These plates had the effect of causing the flow of heat through the tube to be broken up, retarded, and diverted. In short, by the use of these baffles for the breaking up and the retention of the heat within the tube, a greater efficiency was obtained over the flow of the flame directly through the tube. The patent described the tubes that passed through the frying compound as rectangular in shape, and the baffle plates as triangular uprights.

After the issuance of the patent, it was discovered by the then owners that the use of a circular or pipe-shaped tube in place of a rectangular tube was an improvement, and was desirable. This type of pipe tubing was adopted shortly after the issuance of the patent. No one, including the respondent Arthur R. Pitman, treated this change from the form of the tubing described in the patent application as a departure from the claim of the patent as issued. The use of the round tubes was continued up to the time of the alleged infringement. At the time of the adoption of the pipe-shaped tubing the then owners of the patent also discarded the use of the old upright baffle plates, and commenced using a spiral helix somewhat similar to the one now complained of as an infringement. None of the parties, including the respondent Arthur R. Pitman, treated this change from the upright plate baffle to the spiral helix as a departure from the claim of the patent as issued. In short, the respondent Arthur R. Pitman, while still the owner of the patent, or a member of the various corporations owning it, treated the use of the pipe-shaped tubing and the spiral helix as within claim 1 of the patent for a long period of time. After the respondent Pitman terminated his connections with the petitioner corporation, he commenced the manufacture and sale of a "Frialator" almost identical with the article manufactured by the petitioner. His defense now is that the use of a pipe tubing and a spiral helix within it is not a violation of the terms of claim 1 of the patent, and insists that that claim was limited to the use of the upright baffle plates. His change of company seems to have dictated his change of interpretation of claim 1.

Long before the issuance of the patent under consideration, the use of a spiral throughout the length of the tubing for the distribution of the heat had been known. See Eaves, No. 493,376, and Townsend, No. 1,174,533. Similarly, baffle plates within a tube for the purpose of breaking up the flow of heat had been known. See Wilkins et al. No. 641,911. Both the spiral and the baffle plates were then recognized in the art as being used to disturb or break up the flow of heat, and to throw the heat particles against the walls of the tube through which they were passing so as to provide maximum efficiency. The petitioner's invention as described by the file wrapper appears to be an improvement in frying apparatus whereby for the first time the introduction of heat was made from within the heating compound by a combination of old elements. A reasonable reading of the patent shows no disclaimer, on the part of the patentee, of other heat disturbers than the baffle plates, and his failure to specifically mention a spiral in place of the baffle plates cannot be interpreted as a limitation of his invention to the use of baffle plates. The novelty of his idea was in the assembly of old and known elements in such a way as to make a marked change in deep-fat frying. He was a pioneer in the present state of the art of deep-fat frying. The attempt to limit the novelty of his invention to upright baffle plates comes with little grace from a man who, for many years and until his separation from the petitioner corporation, treated the use of a spiral helix in place of the upright baffle plates as being with claim 1 of the patent. I am of the opinion that the patent as issued is valid, and that claim 1 includes the use of the spiral helix within a tubing under the doctrine of equivalents. The respondent Pitman having parted with all of his interest in the patent is no longer entitled to the use of it. I therefore find that the petitioner is entitled to the relief pray-

ed for because of the infringement of its patent rights by the respondents.

A decree may be prepared in accordance with this decision.